**Donald James GRALIKE, Plaintiff,**

v.

**Rebecca McDowell COOK, Defendant.**

No. 96–4417–CV–C–9.

United States District Court,
W.D. Missouri,
Central Division.

Jan. 15, 1998.

Arthur A. Benson, II, Gregg F. Lombardi, Arthur Benson & Associates, Kansas City, MO, for Donald James Gralike.

Tina M. Crow Halcomb, Michael A. Zito, Missouri Attorney General's Office, Jefferson City, MO, for Rebecca McDowell Cook.

*ORDER GRANTING IN PART AND DE-NYING IN PART DEFENDANT'S MOTION TO DISMISS*

BARTLETT, Chief Judge.

Plaintiff Donald James Gralike brought this action under 42 U.S.C. § 1983 seeking declaratory and injunctive relief against Missouri Secretary of State Rebecca McDowell Cook in her official capacity. Plaintiff seeks to enjoin defendant from implementing and enforcing a recent amendment to Article VIII of the Missouri Constitution. The Amendment to Article VIII directs members of the United States Congress from Missouri to use their delegated powers to pass a Congressional Term Limits Amendment to the United States Constitution. The Amendment also requires candidates for United States Congress to either support the congressional term limits amendment or have words stating that they failed to support the amendment placed by their names on the ballot.

In Count I of the Complaint, plaintiff claims that Article VIII, as amended, places impermissible additional qualifications on candidates for United States Congress in violation of Article I of the United States Constitution. In Count II, plaintiff claims that Article VIII, as amended, is unconstitutionally vague. In Count III, plaintiff claims that Article VIII, as amended, violates his First Amendment right to free speech. In Count IV, plaintiff claims that a jurisdictional provision of Article VIII, as amended, violates the Supremacy Clause. In Count V, plaintiff claims that Article VIII, as amended, violates Article V of the United States Constitution. Finally, in Count VI, plaintiff claims that Article VIII, as amended, exceeded the initiative power granted to the people of Missouri under Missouri Constitution Article III.

Defendant now moves to dismiss, arguing that plaintiff lacks standing, that this suit is barred by the Eleventh Amendment to the United States Constitution, and that this Court should refrain from hearing this case under the abstention doctrine.

## I.

## BACKGROUND

During the November 1996 general election, the Missouri voters passed by majority vote a ballot initiative to amend Article VIII of the Missouri Constitution. The Amendment added Sections 15–22 (hereinafter collectively referred to as the Article VIII Amendment) which are intended to promote the passage of a federal constitutional amendment setting term limits for members of the United States Congress. *See* Article VIII, § 15.

Section 16 contains a proposed amendment to the United States Constitution that would limit the number of terms that one individual can serve as United States Senator or Representative.

Section 17(1) directs each member of the Missouri delegation to Congress to use "all of his or her delegated powers to pass the Congressional Term Limits Amendment set forth [in section 16]." Section 17(2) requires that each Missouri Senator or Representative who fails to support the term limits amendment in one of several enumerated ways shall have the words "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" placed adjacent to that person's name on the primary and general election ballots.

For non-incumbent candidates for Congress, Section 18 requires that they be given an opportunity to take a "Term Limits" pledge each time they file to run for congressional office. For those who decline to make the pledge, Section 18(1) requires that the words "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" be printed next to their names on the primary and general election ballots.

The Secretary of State must decide whether words stating failure to support term limits should be placed next to a candidate's name. § 19. In making that determination, the Secretary must consider timely submitted public comments. § 19(2). The Secretary must declare within five days after the filing deadline whether the words "DECLINED TO PLEDGE TO SUPPORT TERM LIMITS" or "DISREGARDED VOTERS' INSTRUCTION ON TERM LIMITS" will be placed next to a candidate's name. § 19(4). After the Secretary makes that determination, subsections 19(5)–(6) give an aggrieved "elector" or "candidate" the opportunity to appeal the Secretary's decision to the Missouri Supreme Court. On appeal, an aggrieved "candidate" has the burden to prove by clear and convincing evidence that the secretary erred by placing a designation next to his or her name. On the other hand, if an aggrieved "elector" appeals the secretary's decision not to place the words stating lack of support for term limits next to a candidate's name, the Secretary has the burden to prove by clear and convincing evidence that candidate met the requirements to avoid having the words placed next to the candidate's name.

Section 20 provides for automatic repeal of Sections 15–22 if the Congressional Term Limits Amendment becomes part of the United States Constitution. Section 21 provides that "[a]ny legal challenge to this Amendment shall be filed as an original action before the Supreme Court of [Missouri]." Finally, Section 22 provides for severability if any portion of the amendment is declared invalid or unconstitutional.

Plaintiff Donald Gralike is a resident of Missouri's Third Congressional District and more than 25 years of age. He has been a United States citizen for more than seven years and is a taxpayer and registered voter in Missouri. Gralike was a candidate for United States Representative for the Third Congressional District of Missouri in 1976. He is currently considering announcing his candidacy for that position in the 1998 election. Under Missouri law, Gralike may not formally file a declaration of candidacy until February 1998.

## II.

## STANDARD FOR MOTION TO DISMISS

Because defendant filed an answer in this case before filing her motion to dismiss, this is technically a motion for a judgment on the pleadings under Rule 12(c), Federal Rules of Civil Procedure. However, Rule 12(c) motions are evaluated using the same

standard as motions under Rule 12(b), Federal Rules of Civil Procedure. *Westcott v. City of Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990).

In ruling on a motion to dismiss, it is the court's obligation to accept as true all factual allegations in the complaint and all inferences that reasonably may be drawn from those facts and to construe the Complaint in the light most favorable to the complaining party. *Warth v. Seldin*, 422 U.S. 490, 501, 95 S.Ct. 2197, 2206, 45 L.Ed.2d 343 (1975) (citing *Jenkins v. McKeithen*, 395 U.S. 411, 421–22, 89 S.Ct. 1843, 1848–49, 23 L.Ed.2d 404 (1969)). A Complaint should not be dismissed unless it appears beyond a doubt that the plaintiff can prove no facts that would entitle plaintiff to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

### III.

### ANALYSIS

#### A. *Standing*

Article III of the United States Constitution limits the federal judiciary to resolving "Cases" or "Controversies." *Boyle v. Anderson*, 68 F.3d 1093, 1099 (8th Cir. 1995). The standing doctrine is intended to ensure that a litigant has a sufficient stake in the outcome of a lawsuit. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).

In *Lujan*, the United States Supreme Court recognized three elements that a plaintiff must satisfy as an "irreducible constitutional minimum" to have standing: (1) "the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical;" (2) "there must be a causal connection between the injury and the conduct complained of;" and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 599–60, 112 S.Ct. at 2136 (internal citations and quotations omitted). The plaintiff bears the burden of

establishing the elements of standing. *Id.* at 561–63, 112 S.Ct. at 2137.

Defendant argues that plaintiff fails the first prong of the *Lujan* test. First, defendant argues that because plaintiff has not met the requirements to officially become a candidate for United States Congress, he has no more interest in this matter than any other Missouri citizen. Second, defendant argues that because plaintiff is only "considering" candidacy for the United States Congress, plaintiff's claim of injury or threat of injury is too speculative to support standing.

In response, plaintiff states that when the time comes to declare his candidacy, he intends to do so. Plaintiff points out that Missouri law prohibits election officials from accepting a candidate's declaration before the last Tuesday in February of an election year. *See* Mo.Rev.Stat. § 115.349.

#### 1. *Materials Outside the Pleadings May be Considered on a Motion to Dismiss for Lack of Standing*

With his response to defendant's motion to dismiss, plaintiff submitted an affidavit entitled Declaration of Donald Gralike. In that statement, plaintiff states his "present intention to run for the United States Congress in the Third District of Missouri in the year 1998."

Plaintiff states in his Suggestions in Response that the Declaration is in response to defendant's Motion to Dismiss. Plaintiff also states that "[b]y submitting this Declaration, which goes beyond the pleadings, it is not plaintiff's intent to convert this motion to a request for summary judgment." Plaintiff's Response to the Defendant's Motion to Dismiss at 1.

On a motion to dismiss for lack of standing, "it is within the trial court's power to allow or require the plaintiff to supply, by amendment to the complaint or by affidavits, further particularized allegations of fact deemed supportive of plaintiff's standing. If, after all this opportunity, the plaintiff's standing does not adequately appear from all materials of record, the complaint must be dismissed." *Warth v. Seldin*, 422 U.S. 490, 501–02, 95 S.Ct. 2197, 2206–07, 45 L.Ed.2d

343 (1975). Therefore, I am permitted to consider the Declaration of Donald Gralike in deciding whether plaintiff has standing.

The statements in the Declaration are somewhat inconsistent with the factual allegations in the Complaint. In the Complaint, Gralike alleges that because of his concerns about the limitations that the Article VIII Amendment would impose on his ability to adequately represent his constituency if elected, plaintiff will not run for Congress if the Article VIII Amendment is valid. Complaint § 32. On the other hand, in the Declaration, Gralike states that he presently intends to run for the United States Congress in 1998. Because I must construe all the materials of record in the light most favorable to the plaintiff, I must resolve any inconsistency in favor of Gralike. Therefore, I will assume for the purpose of ruling on defendant's challenge to standing that plaintiff either presently intends to run for Congress in 1998, or plaintiff desires to run for Congress but will not if the Article VIII Amendment is valid.

### 2. *First Requirement for Standing*

#### a. *Plaintiff has a "Legally Protected Interest" Sufficient for Standing*

The Supreme Court has taken a liberal view of what constitutes a "legally protected interest." The interest must be more individualized than one which the plaintiff shares with the public at large. *Arizonans for Official English v. Arizona*, 520 U.S. 43, ——, 117 S.Ct. 1055, 1067, 137 L.Ed.2d 170 (1997); *Warth*, 422 U.S. at 499, 95 S.Ct. at 2205 (stating that the harm alleged must be more than a "generalized grievance" which the plaintiff shares "in substantially equal measure by all or a large class of citizens"). Furthermore, the plaintiff must assert his own, personal legal rights and interests. *Lujan*, 504 U.S. at 599–60, 112 S.Ct. at 2136; *Warth*, 422 U.S. at 498–500, 95 S.Ct. at 2205. However, the plaintiff's alleged interest need not be "significant;" a "small" stake in the outcome will suffice if it is direct. *United States v. SCRAP*, 412 U.S. 669, 687–88, 93 S.Ct. 2405, 2415, 37 L.Ed.2d 254 (1973). Even purely aesthetic and environmental interests consti-

tute "legally protected interests" if they are concrete and personal to the plaintiff. *Lujan*, 504 U.S. at 561–63, 112 S.Ct. at 2137; *SCRAP*, 412 U.S. at 684–89, 93 S.Ct. at 2415–16. The Supreme Court has also recognized that a potential candidate for public office has a legally protected interest in becoming a candidate for public office sufficient to satisfy Article III. *Clements v. Fashing*, 457 U.S. 957, 961–62, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982).

Here, plaintiff claims that the Amendment to Article VIII threatens injury to his interest in running for public office. Not every member of the public desires to run for public office. As a future candidate or even a potential future candidate, plaintiff has a greater personal stake in challenging the Article VIII Amendment than does the public at large. Moreover, although plaintiff does allege in his Complaint that he is "generally inclined to be against limitations on terms of members of Congress," Complaint ¶ 28, plaintiff's other allegations state more than merely a "generalized grievance" against the recent Amendment to Article VIII.

Not only does plaintiff claim that he is interested in running for public office, he also claims that he is interested in becoming a candidate for Congress. However, he is concerned about how the Article VIII Amendment would affect his chances of getting elected and how the Article VIII Amendment would affect his ability to adequately represent his constituency if elected. Complaint 11 32, 36. Therefore, plaintiff has shown that he has a personal stake in the outcome of this matter that is distinct from interests which he shares with the general public.

#### b. *Plaintiff Has Alleged a Sufficiently Imminent Threat of Future Injury to Satisfy the Injury–in–Fact Standing Requirement*

In addition to having a sufficiently personal interest in the dispute to satisfy the injury-in-fact standing requirement, the plaintiff must also show that the threatened injury is actual or imminent, not hypothetical or conjectural. *Sierra Club v. Robertson*, 28 F.3d 753, 758 (8th Cir.1994). However,

"[o]ne does not have to await the consummation of threatened injury to obtain preventative relief." *Babbitt v. United Farm Workers Nat'l Union,* 442 U.S. 289, 298, 99 S.Ct. 2301, 2308, 60 L.Ed.2d 895 (1979) (citation omitted).

■ One factor in deciding whether plaintiff has alleged an actual or imminent threat of injury is whether plaintiff is challenging a regulation which he himself is the object. When a plaintiff challenges a government regulation that governs the conduct of someone other than the plaintiff, then the plaintiff faces a difficult task to show that the threat of injury to plaintiff is certain and imminent. *Lujan,* 504 U.S. at 561–63, 112 S.Ct. at 2137. On the other hand, if a plaintiff challenges a government regulation of which plaintiff himself is the object, "there is ordinarily little question that the [defendant's] action or inaction has caused the injury." *Lujan,* 504 U.S. at 555, 112 S.Ct. at 2130.

■ A second factor in deciding whether there is an imminent threat of harm to the plaintiff is the plaintiff's level of certainty that he will engage in conduct that will subject him to injury. *See id* at 563–64, 112 S.Ct. at 2138. When the plaintiff has been able to state with some certainty an intent to engage in allegedly expected conduct at a relatively specific time in the future, courts have found a sufficiently imminent threat of harm to meet the first element in the *Lujan* test. *See, e.g., Adarand Constructors, Inc. v. Pena,* 515 U.S. 200, 212, 115 S.Ct. 2097, 2105, 132 L.Ed.2d 158 (1995) (holding that plaintiff's statement that it bid on every guardrail project in Colorado, combined with affidavits showing that there had been fourteen guardrail contracts up for bid between 1983 and 1990, created a sufficient certainty that plaintiff would bid on contracts in the future to support standing); *Mausolf v. Babbitt,* 85 F.3d 1295, 1301–02 (8th Cir.1996) (holding that plaintiff met requirements for standing to challenge an agency's actions in lifting restrictions on snowmobiling because she "swore that she visits the Park at least twice a year, and described specific, imminent, future trips she had planned"). As articulated by the Supreme Court, a plaintiff has satisfied the imminent threat requirement by showing that injury is "*certainly* impending." *Adarand Constructors,* 515 U.S. at 211, 115 S.Ct. at 2105 (quoting *Lujan,* 504 U.S. at 563–66 n. 2, 112 S.Ct. at 2138–39 n. 2 (emphasis in original)).

In this case, plaintiff has alleged facts supporting a sufficiently imminent threat of injury. First, unlike the plaintiffs in *Lujan,* Gralike is not claiming that he will be indirectly injured by the effects of a state measure aimed at regulating the conduct of third parties. Plaintiff's challenge to the Missouri law is based on how the law would effect him as a candidate or potential candidate for Congress. Second, plaintiff has done more than merely state that he is interested in becoming a candidate for office at some unknown, future time. Plaintiff has stated that he plans to run for Congress from Missouri's Third Congressional District in the next election in 1998. Declaration ¶ 2. Plaintiff has also outlined his plans to take the formal steps required under Missouri law to declare his candidacy, and has stated that he intends to file for candidacy as soon as Missouri law allows him to do so. Declaration ¶ 3–6. As a non-incumbent candidate for Congress, plaintiff will be subject to the requirements of the Article VIII Amendment, §§ 18–19. In stating his present plans to take specific steps toward becoming a candidate at a specific time in the future, plaintiff has established an imminent threat of certainty impending injury.

Utilizing the alternative assumption about Gralike's intentions, i.e., that he desires to run for Congress but will not do so if the Article VIII Amendment remains in effect, plaintiff satisfies the imminent threat of certainty impending injury factor. In *Clements v. Fashing,* 457 U.S. 957, 961–62, 102 S.Ct. 2836, 2843, 73 L.Ed.2d 508 (1982), the Supreme Court examined the justiciability of several Texas judges' claims challenging a state constitutional provision that caused judicial officers to automatically resign from their positions if they announced their candidacy for higher judicial office. The plaintiffs were officeholders who alleged that they had not and would not announce their candidacy for higher judicial office because by doing so

they would automatically forfeit their present positions. *Id.* The Court concluded that the plaintiffs met the imminent injury requirement, noting that the plaintiffs had stated:

> In a precise manner that, but for the sanctions of the constitutional provision they seek to challenge, they would engage in the very acts that would trigger the enforcement of the provision. Given that § 65 provides for *automatic* resignation upon an announcement of candidacy, it cannot be said that § 65 presents only a speculative or hypothetical obstacle to appellees' candidacy for higher judicial office.

*Id.*

Similarly, here, if Gralike announces his candidacy, he will be subject to Article III, § 18. Therefore, as with the provision at issue in *Clements,* the risk of injury to plaintiff from the provisions of § 18 providing certain restrictions as soon as plaintiff announces his candidacy does not present merely a "speculative or hypothetical obstacle" to Gralike's candidacy.

### 3. Second Requirement for Standing: Plaintiff Meets the Causation Standing Requirement

Plaintiff has also alleged facts in his complaint sufficient to satisfy the second requirement for standing. Plaintiff seeks to enjoin defendant from enforcing the Article VIII Amendment. There is a direct causal relationship between the challenged conduct—enforcement of the Article VIII Amendment—and the injury—having to face the barriers to candidacy that the Amendment imposes.

### 4. Third Requirement for Standing: Plaintiff Meets the Redressibility Standing Requirement

Finally, Plaintiff has alleged facts in his complaint sufficient to satisfy the third standing requirement. Enjoining defendant from enforcing the Article VIII Amendment would remove the disincentives to becoming a candidate that plaintiff claims the Article VIII Amendment creates. Enjoining the enforcement of the new law would also remove the burden that plaintiff claims the Amendment imposes on his chances of being elected and representing his constituents. Therefore a favorable decision for plaintiff would redress plaintiff's alleged injury.

Because plaintiff has satisfied the essential elements of standing under Article III of the United States Constitution, defendant's motion to dismiss for lack of standing must be denied.

### B. Plaintiff Meets the Requirements for Injunctive Relief

Defendant argues that even if plaintiff satisfies the requirements for standing under Article III, he has failed to meet the requirements for injunctive relief. In support, defendant cites the Supreme Court's opinion in *Lyons,* in which the Court stated that to qualify for equitable relief in federal court, a plaintiff must show "a likelihood of substantial and immediate irreparable injury." *Lyons,* 461 U.S. at 111, 103 S.Ct. at 1670 (quoting *O'Shea v. Littleton,* 414 U.S. 488, 502, 94 S.Ct. 669, 679, 38 L.Ed.2d 674 (1974)). In *Lyons,* the Court held that the plaintiff had failed to meet the requirements necessary to seek an injunction against the defendant's alleged choke hold policy because he could not show a sufficient likelihood that he would be subjected to a chokehold in the future. *Id.*

█ In contrast to the plaintiff in *Lyons,* Gralike has alleged facts that support his claims that he faces irreparable injury if the Article VIII Amendment is enforced. Here, it is not a matter of speculation whether Gralike will be subject to the alleged illegal government conduct in the future. If he becomes a candidate, Gralike will be subject to the state law that he claims is unconstitutional. Even as an individual who desires to become a candidate, Gralike faces injury because allegedly the mere threat of enforcement will keep him from engaging in conduct that he has a desire to engage in, running for Congress. Therefore, the Supreme court's decision in *Lyons* is not controlling here. Gralike has satisfied the requirements for bringing a claim for injunctive relief in this case.

## C. Eleventh Amendment Immunity

 Defendant argues that this suit is barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State...." U.S. Const.Amend. XI. In addition to protecting states from suits by citizens of other states as the plain language of the Eleventh Amendment provides, the Supreme Court has ·held that the Eleventh Amendment embodies a "broader concept of immunity" that also protects states from suits by its own citizens. *Idaho v. Coeur d'Alene Tribe,* ─── U.S. ───, ───, 117 S.Ct. 2028, 2033, 138 L.Ed.2d 438 (1997) (citing *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890)). Eleventh Amendment immunity extends to suits against state officials acting in their official capacities. *Thomas v. Gunter,* 32 F.3d 1258, 1261 (8th Cir.1994).

 However, in *Ex Parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), the Supreme Court recognized an important exception to Eleventh Amendment sovereign immunity. Under the doctrine established in *Young,* Eleventh Amendment immunity does not bar some suits for prospective injunctive relief against state officials acting in their official capacities. *Coeur d'Alene Tribe,* ─── U.S. at ───, 117 S.Ct. at 2034. *Young* applies in two types of cases. The first, not implicated here, is when a litigant has no forum other than federal court in which to redress an alleged violation of rights. *See id.* at ───, 117 S.Ct. at 2035. The second type of case to which *Young* applies is where the plaintiff seeks relief that requires the interpretation of federal law. *Id.* at ───, 117 S.Ct. at 2036.

 The Court has recognized that whether *Young* applies requires a case-by-case analysis in which a court must balance state interests against the federal interest in enforcing compliance with federal law. *Id.* at ───, 117 S.Ct. at 2036–37. In deciding whether Young authorizes a federal suit in a particular case, the federal court must look to the "essential nature and effect of the proceeding." *Id.* at ───, 117 S.Ct. at 2038. For example, in cases where the plaintiff seeks to establish ownership over state resources or funds, or where the injunctive relief sought would require the state to pay substantial funds from its treasury, the state's interest in the litigation is so substantial that an action against a state official under *Young* is not justified. *Id.* at ───, 117 S.Ct. at 2038–39; *see, e.g., id.* at ───, 117 S.Ct. at 2040–41 (holding that sovereign immunity barred suit by Indian tribe seeking to compel state officials to turn over ownership and control of disputed lands and waters); *Edelman v. Jordan,* 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974) (holding that sovereign immunity barred a suit against state officials when the relief sought required state officials to retroactively pay federal benefits). On the other hand, "[a]n allegation of an on-going violation of federal law where the requested relief is prospective is ordinarily sufficient to invoke the *Young* fiction." *Coeur d'Alene Tribe,* ─── U.S. at ───, 117 S.Ct. at 2040; *see, e.g., Milliken v. Bradley,* 433 U.S. 267, 288–90, 97 S.Ct. 2749, 2761–62, 53 L.Ed.2d 745 (1977) (holding the *Young* doctrine applicable where plaintiff merely sought an injunction against ongoing violations of federal civil rights); *Mille Lacs Band of Chippewa Indians v. Minnesota,* 124 F.3d 904, 914 (8th Cir.1997) (holding that Indian tribe's suit against state officials to enjoin them from committing on-going violations of federal treaty rights fell within the *Young* exception to sovereign immunity); *In re SDDS, Inc.,*' 97 F.3d 1030, 1035 (8th Cir. 1996) (holding *Young* applicable in an action to enjoin state officials from enforcing a law in violation of the Commerce Clause).

 Here, Gralike asserts that the recent amendment to Article VIII violates Articles I, V, and VI of the United States Constitution, and that enforcement of those provisions would violate his rights under the First and Fourteenth Amendments. Gralike seeks to enjoin Cook from violating federal law by enforcing the Amendment to Article VIII in the future. Gralike does not seek relief that would require the state of Missouri to forfeit control over its funds or resources. Rather,

he merely seeks prospective injunctive relief to preclude what he alleges will be an ongoing violation of federal law. Therefore, Eleventh Amendment immunity does not support dismissal of Gralike's claims for violation of the United States Constitution.

In her reply, defendant correctly points out that *Young* does not apply to claims against state officials brought under state law. In Count VI, Gralike alleges that the Amendment to Article VIII violates the Missouri Constitution because the Amendment was proposed by the initiative process. Because Count VI alleges a violation of state, not federal law, the Eleventh Amendment protects the State of Missouri from having to defend that claim in federal court. Accordingly, this Court lacks subject matter jurisdiction over Count VI. Count VI will be dismissed.

### D. *Abstention*

Finally, defendant argues that this Court should abstain from exercising jurisdiction in this case because Gralike's federal claims require the interpretation of unsettled questions of state law. Defendant asserts that abstention is proper under the doctrine set forth in *Railroad Commission v. Pullman Co.*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). Under *Pullman*, a federal court must refrain from exercising jurisdiction over a case that "involves a potentially controlling issue of state law that is unclear, and the decision of this issue by the state courts could avoid or materially alter the need for a decision on constitutional grounds." *Robinson v. City of Omaha*, 866 F.2d 1042, 1043 (8th Cir.1989).

In general, abstention is the exception, not the rule. *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813, 96 S.Ct. 1236, 1244, 47 L.Ed.2d 483 (1976). There are two requirements for *Pullman* abstention to be applicable in a particular case: 1) a controlling issue of state law must be unclear; and 2) a reasonable interpretation of the state law must either be dispositive of the case or substantially modify the federal constitutional question. *Id.* If the unclear issue of state law is "susceptible to a limiting construction" which would render

unnecessary the need to resolve the federal constitutional issues, then *Pullman* abstention is appropriate. *City of Houston v. Hill*, 482 U.S. 451, 468, 107 S.Ct. 2502, 2513, 96 L.Ed.2d 398 (1987). If there is no obvious, reasonable construction of the state law that would resolve the issues in the case, then Pullman abstention does not apply and the federal court has a duty to exercise its jurisdiction. *Id.* at 2513.

Defendant argues that because plaintiff has asserted that the Amendment to Article VIII is ambiguous and because plaintiff states in Count II of his Complaint that the Amendment to Article VIII is unconstitutionally vague, the constitutionality of the Amendment to Article VIII rests on an interpretation of the Amendment. Therefore, defendant argues that abstention is appropriate because the Supreme Court of Missouri should be allowed to interpret the Amendment to Article VIII and possibly resolve the alleged ambiguities.

I agree that Missouri courts are the best equipped to interpret the Missouri Constitution. I also agree with defendant that in his Complaint, plaintiff claims that the Article VIII Amendment is ambiguous and vague. For instance, plaintiff complains that Sections 17–19 of Article VIII leave unclear what acts a legislator must perform or pledge to perform in support of a term limits amendment in order to avoid having the negative designation placed next to his name on the ballot. Complaint ¶¶ 39–40. Plaintiff alleges that Sections 17–19 of Article VIII fail to state with particularity how a legislator is supposed to act in specific situations. For example, the Amendment is silent on how the legislator must vote if the proposed term limits amendment set forth in Article VIII, Section 16, has been proposed for a vote but then amended. *Id.* ¶ 41. Plaintiff also alleges that under Section 19, it is unclear what the Secretary of State's obligations are in considering "timely submitted public comments." *Id.* ¶ 43.

Despite plaintiff's claims that the Article VIII Amendment is ambiguous and unconstitutionally vague, however, *Pullman* abstention is not appropriate in this case.

First, defendant has not proffered any reasonable limiting construction of the Amendment to Article VIII that would resolve the federal constitutional issues in this case. Second, abstention is not proper where a plaintiff makes a facial challenge to a state statute on First Amendment grounds.

In Counts I and V, plaintiff claims that the State of Missouri lacks the power to impose the restrictions on candidacy for Congress provided in the Article VIII Amendment because imposed restrictions on candidacy for Congress violate Articles I and V of the United States Constitution. *See, e.g., U.S. Term Limits, Inc. v. Thornton,* 514 U.S. 779, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995) (holding that a state law violates Article I when it has the likely effect of disadvantaging a class of candidates for national office and has the sole purpose of indirectly creating qualifications in addition to those set forth in Article I). Despite any ambiguities in the Amendment to Article VIII, it is clear that the statute is intended to promote the passage of a constitutional amendment setting term limits. It is also clear that the Amendments empower the Secretary of State in some instances to place certain words describing the candidate's position on an issue next to a candidate's name on the ballot.

Plaintiff challenges in Counts I and V the State's power to attempt to require candidates for Congress to take a position on a particular issue. The constitutional questions plaintiff has raised in Counts I and V do not depend on the circumstances under which the Secretary will carry out her legislative directive to accomplish this legislative purpose. The essential issue raised by plaintiff is whether the State of Missouri has the power to legislatively encourage candidates for Congress to support term limits. Any uncertainty about how the Secretary of State is directed to go about advising the electorate of the candidate's position dose not impact the essential issue.

Regardless of any clarifying interpretation by Missouri state courts, the issue involving the alleged violation of the United States Constitution would remain.

With regard to Counts II and III, where a plaintiff makes a facial challenge to a state law alleging that the state law abridges his freedom of expression, *Pullman* abstention is not appropriate. *Hill,* 482 U.S. at 467–69, 107 S.Ct. at 2513. "In such case[s] to force the plaintiff who has commenced a federal action to suffer the delay of state-court proceedings might itself effect the impermissible chilling of the very constitutional right he seeks to protect." *Id.* (quoting *Zwickler v. Koota,* 389 U.S. 241, 252, 88 S.Ct. 391, 397, 19 L.Ed.2d 444 (1967)).

In Count II, plaintiff alleges that the Article VIII Amendment is unconstitutionally vague. In Count III, plaintiff alleges that the Amendment to Article VIII seeks to require Missouri congressional candidates to take a specific position on term limits. Plaintiff asserts that this constitutes forced speech under the First Amendment. Until these issues are resolved, plaintiff faces a possible impermissible chilling of his First Amendment right to free speech by having to decide whether to run for Congress and face the requirements of Article VIII, as amended. If he decides to run, plaintiff would then have to decide whether to take the Term Limits Pledge or suffer the consequences for failure to take the pledge. Therefore, abstention here is improper.

Furthermore, "[i]n the case where applicability of a statute is uncertain, abstention is often proper, while in the case where the vagueness goes to the obligations imposed by statute, it is not, since a single state construction often would not bring the challenged statute 'within the bounds of permissible constitutional certainty.'" *Harris County Commissioners Court v. Moore,* 420 U.S. 77, 86 n. 9, 95 S.Ct. 870, 876–77 n. 9, 43 L.Ed.2d 32 (1975) (citation omitted).

In Count II, plaintiff's vagueness claims go to "the obligations imposed by" the Article VIII Amendment, and not whether the Amendment to Article VIII will govern his conduct if he becomes a candidate. There is no uncertainty that if Gralike runs for Congress, he will be asked to take the Term Limits Pledge and if he refuses, plaintiff runs the risk of having the Secretary of State add certain words after his name on the ballot. Because plaintiff's vagueness claims go to the

obligations imposed by the amendments and not whether the amendments would apply to him, *Pullman* abstention is not proper.

Finally, with regard to Count IV, plaintiff claims that the jurisdictional provision in section 21 of Article VIII violates the Supremacy Clause. However, defendant has not objected to federal jurisdiction based on Section 21. Not only do the parties agree that federal jurisdiction is proper in this case, but neither has offered a reasonable interpretation of Section 21 that the state court might adopt which would preclude federal jurisdiction. Therefore, even if Section 21 is ambiguous, that section does not provide a basis to abstain in this case.

Therefore, *Pullman* abstention is not appropriate in this case.

### E. *Certification to the Missouri Supreme Court*

As an alternative to abstention under *Pullman,* defendant suggests certification of the state law issues in this case to the Missouri Supreme Court. However, the Missouri Supreme Court has held that it does not have jurisdiction under the Missouri Constitution to render opinions on questions of law certified by federal courts. *Zeman v. V.F. Factory Outlet, Inc.,* 911 F.2d 107, 108–09 (1990) (discussing the Missouri Supreme Court's order in *Zeman v. V.F. Factory Outlet, Inc.,* No. 72613 (Mo. July 13, 1990)). Therefore, certification of questions to the Missouri Supreme Court is impossible.

### IV.

### CONCLUSION

Accordingly, it is ORDERED that:

1) defendant's original motion to dismiss (Doc. No. 10), filed April 25, 1997, is denied as moot; and

2) Defendant's Motion to Dismiss Plaintiff's First Amended Complaint (Doc. No. 29) is granted as to Count VI but denied in all other respects.